Carl LUTZ and Deborah Lutz, et al., Plaintiffs,

v.

CHROMATEX, INC., et al., Defendants.

Civ. No. 88–1764.

United States District Court,
M.D. Pennsylvania.

June 9, 1989.

tions to dismiss will be granted in part and plaintiffs will be required to file a second amended complaint.

## BACKGROUND

This civil action was commenced on behalf of sixty-six (66) plaintiffs by a complaint filed on October 21, 1988. Before defendants' response time had elapsed, plaintiffs filed an amended complaint. *See* document 27 of record. The amended complaint consists of nine counts alleging causes of action against the various defendants under CERCLA, RCRA, and Pennsylvania common law.

According to the allegations in the amended complaint, which are accepted as true for purposes of the present motions, plaintiffs are residents or former residents of homes and apartments in West Hazleton, Pennsylvania. During October and November of 1987, the Pennsylvania Department of Environmental Resources (DER) conducted analytical tests of the private drinking water wells being used by plaintiffs. These tests revealed that the wells had been "permanently contaminated with significant concentrations of highly toxic chemicals, including ... trichloroethylene ..., dicholoroethylene ..., trichlorofluoromethane and methylene chloride." *See id.* at ¶ 52. Plaintiffs were exposed to these highly toxic chemicals through ingestion, inhalation, and skin absorption. Based on this contamination, the Environmental Protection Agency (EPA) determined the situation to comprise an immediate and substantial endangerment to the health of plaintiffs and others affected by the contamination. *Id.* at ¶ 56.

Plaintiffs allege that the contamination of their homes and their personal exposure to toxins resulted from releases of toxic chemicals caused by culpable acts and omissions of defendants, their agents, servants, and employees. *See id.* at ¶¶ 57–65. As a result of this contamination, plaintiffs contend that they have suffered and will continue to suffer harm and expenses, including response costs (as defined in CERCLA), personal injury, damage to their property, medical expenses, annoyance, in-

James R. Ronca, Schmidt & Ronca, P.C., Harrisburg, Pa., and Gerald J. Williams, Philadelphia, Pa., for plaintiffs.

John Gerard Whelly, Jr., Wilkes–Barre, Pa., Robert Ufberg, Scranton, Pa., Daniel Segal, David Richman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., Ronald J. Worobey, Scranton, Pa., C. George Caudle, Caldwell, Heggie & Helton, Chattanooga, Tenn., Donald W. Stever, New York City, Anthony R. Sherr, Sherr, Joffe & Zuckerman, West Conshohocken, Pa., and Robert F. DiUbaldo, New York City, for defendants.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Currently before the court in this action filed pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* (CERCLA), and the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* (RCRA), are defendants' motions to dismiss plaintiffs' amended complaint. For the reasons that follow, defendants' mo-

convenience, and disturbance, a disruption of their daily lives, a loss of the use and quiet enjoyment of their properties, an increased risk of cancer and other diseases, emotional distress, and other damages. *Id.* at ¶ 66. They seek compensatory damages, reimbursement for response costs, civil penalties, exemplary damages, costs, and interest as well as "an order that defendants, at defendants' expense, take such remedial actions as are necessary to abate the pollution of the environment in and around the Chromatex and Continental sites...." *Id.* at pp. 28–29.

Defendant Chromatex, Inc. filed its motion to dismiss on January 18, 1989. *See* documents 38–40 of record. A similar motion was submitted by defendant Continental White Cap, Inc. on February 13, 1989. *See* document 48 of record. Plaintiffs noted their opposition to the motions on February 2, 1989 and February 24, 1989, respectively. *See* documents 45, 46, and 55 of record. Defendant Chromatex filed its reply brief on February 15, 1989, and defendant Continental White Cap did the same on March 13, 1989. *See* documents 51 and 58 of record, respectively.[1] These motions are now ripe for disposition.

### DISCUSSION

In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). The complaint may be dismissed only if it appears that plaintiffs cannot establish any set of facts in support of their claims which would entitle them to relief. *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa.1985) (Rambo, J.). Because plaintiffs assert several claims against defendants, each claim must be examined *in seriatim* to determine if that claim should withstand a mo-

tion to dismiss. *Kuchka v. Kile,* 634 F.Supp. 502, 506 (M.D.Pa.1985) (Nealon, C.J.).

### CERCLA

#### A. Response Costs

In discussing a claim for response costs under CERCLA, the Third Circuit Court of Appeals has stated as follows:

> CERCLA is not a paradigm of clarity or precision. It has been criticized frequently for inartful drafting and numerous ambiguities attributable to its precipitous passage. Problems of interpretation have arisen from the Act's use of inadequately defined terms, a difficulty particularly apparent in the response costs area.

*See Artesian Water Co. v. Government of New Castle County,* 851 F.2d 643, 648 (3d Cir.1988), *aff'g,* 659 F.Supp. 1269 (D.Del. 1987). Nevertheless, in dealing with such a claim, it must be kept in mind "that the Act was not intended to compensate third parties for damage resulting from hazardous substance discharge." *Id.* at 648 (citing *Exxon Corp. v. Hunt,* 475 U.S. 355, 375, 106 S.Ct. 1103, 1115, 89 L.Ed.2d 364 (1986)).

Section 107(a)(4)(B) of CERCLA provides that a responsible party shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan...." *See* 42 U.S.C. § 9607(a)(4)(B). The Act does not explain the term "cost of response." *See Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. at 1286 n. 28. The Act does define "response" as "remove, removal, remedy, and remedial action," *see* 42 U.S.C. § 9601(25), and "[t]hese terms explicitly include enforcement activities related to the cleanup effort." *Artesian Water Co. v. Government of New Castle,* 851 F.2d at 648.

Section 101(23) states that the term "remove" or "removal" means

> the cleanup or removal of released hazardous substances from the environment,

---

1. Motions to dismiss were also filed by each of the remaining defendants. *See* documents 33–34, 35–36, and 42–43 of record. To a large extent, these motions rely on and incorporate the grounds raised by defendants Chromatex and Continental. To the extent they raise additional issues, the motions to dismiss will be denied without prejudice to defendants' right to file for summary judgment following the completion of discovery.

such actions as may be [necessarily] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act [42 U.S.C.A. § 5121 et seq.].

*See* 42 U.S.C. § 9601(23). In turn, the term "remedy" or "remedial action" is defined as

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances or contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the

costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

*See id.* § 9601(24).

To state a claim under section 107 of CERCLA, a plaintiff must allege that (1) the waste disposal site is a "facility" within the meaning of 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" from the facility has occurred, *id.* § 9607(a)(4); and (3) such "release" or threatened release" has caused the plaintiff to incur response costs that are "consistent with the national contingency plan...." *Id.* § 9607(a)(4); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989). In addition, the defendant must fall within one of four classes of persons subject to CERCLA's liability provisions. *See* 42 U.S.C. § 9607(a)(1)–(4); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d at 1152–1153. Count I in plaintiffs' amended complaint contains each of the necessary allegations. *See* document 27 of record, at ¶¶ 67–72. Nevertheless, in their motion to dismiss Count I, defendants argue that paragraph 71 contains certain alleged "response costs" that are not recoverable under CERCLA. *See* document 39 of record, at pp. 6–23; document 48 of record, at pp. 28–30. Each contested category of response costs will be examined *in seriatim.*

(1) *Medical Monitoring*

██ In paragraph 71(a) of their amended complaint, plaintiffs allege that they have incurred and will continue to incur response costs for "biological monitoring of their health and physical condition to determine the extent and duration of adverse

health effects associated with the release...." *See* document 27 of record, at ¶ 71(a). Defendants claim that such costs are not recoverable under CERCLA. While the parties' briefs illustrate a split of authorities on the issue, this court believes that the conclusion reached in *Coburn v. Sun Chemical Corp.*, 28 Env't Rep.Cas. (BNA) 1665 (E.D.Pa. Nov. 9, 1988) (available on WESTLAW at 1988 WL 120739) is the proper one. *See* document 40 of record, Exhibit D (copy of *Coburn* opinion). There, the court stated as follows:

> After reviewing the language of CERCLA, the legislative history and the case law, we believe that costs of medical screening and/or future medical monitoring are clearly not "necessary costs of response" under § 107 of CERCLA, as amended, 42 U.S.C. § 9607(a)(4)(B). Reading the language of CERCLA, one notes that the phrase "necessary costs of response" is not defined anywhere in CERCLA, and the word "response" is defined only as "remove, removal, remedy and remedial action." 42 U.S.C. § 9601(25). The statutory definitions of each of these words do not contain any references whatsoever to medical expenses of any kind nor do they give any inferences that such expenses are recoverable response costs under CERCLA. Rather, the definitions of these words clearly contemplate only the cleanup of toxic substances from the environment. While CERCLA does contain medical care provisions, these provisions are separate from the liability provisions of Section 107 of CERCLA. *See* [*Chaplin v. Exxon Corp.*, 25 Env't Rep.Cas. (BNA) 2009 (S.D.Tex. June 10, 1986) (1986 WL 13130)]. Specifically, as part of the 1986 SARA amendments, Congress created the Agency for Toxic Substances and Disease Registry in Section 104(i) of CERCLA to provide medical care and testing to exposed individuals including "tissue sampling chromosomal testing, epidemiological studies, or any other assistance appropriate under the circumstances." 42 U.S.C. § 9604(i)(4). As noted by the *Chaplin* court, "[s]uch medical testing costs clearly differ from either the response costs or clean up costs allowed in Section 9607." *Chaplin* at 2012.... Certainly, when Congress wanted to provide for medical care and testing, it knew how to do so in explicit language.

> Our conclusion that costs of medical screening and/or future medical monitoring are not "necessary costs of response" under § 107 of CERCLA finds support in the legislative history of CERCLA. Although as is evident from the original Senate Superfund Bill, Congress contemplated including medical monitoring under CERCLA, Senator Randolph, commenting on the final compromise bill which became CERCLA, specifically stated "[w]e have deleted the federal cause of action for medical expenses or property or income loss." 126 Cong.Rel. S14964 daily ed. Nov. 24, 1980). Indeed, the Supreme Court, after reviewing this legislative history, observed that CERCLA was not intended to compensate private parties for damages resulting from hazardous substance discharge. *Exxon Corp., supra.* The United States Court of Appeals for the Third Circuit, after reviewing this same legislative history, has indicated that is does not believe that reimbursement for property or income loss is possible under CERCLA. *Artesian Water Co. v. New Castle County*, 851 F.2d 643, 648–49 (3d Cir.1988).

*See Coburn v. Sun Chemical Corp., supra.* Rather than add unnecessarily to the length of this Memorandum, the court will simply adopt the rationale of the *Coburn* court as its own. Therefore, defendants' motion to dismiss paragraph 71(a) of plaintiffs' amended complaint will be granted.

(2) *Loss of Wells*

In paragraph 71(c) of the amended complaint, plaintiffs cite "loss of use of their wells" as an appropriate response cost. *See* document 27 of record, at ¶ 71(e). Defendants argue that such a claim is either "one for economic loss or natural resource damages, harms clearly beyond the scope of a CERCLA private-party response." *See* document 39 of record, at pp.

17–19. As the court agrees that the claim sounds of one for natural resource damages, defendants' motion to dismiss will be granted.

Section 107 of CERCLA creates liability for "damages for injury to, destruction of, or loss of natural resources. *See* 42 U.S.C. § 9607(a)(4)(C). "Natural resources" are defined to include "water, ground water, drinking water supplies and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... any State or local government, or any foreign government." *Id.* § 9601(16). Under CERCLA, however, actions for injury, destruction, or loss of a natural resource may be brought only by the federal government or a state. *Id.* § 9607(f).

It is obvious that the supply of drinking water in Pennsylvania is managed and controlled by the state. *See, e.g.,* 35 P.S. § 691.1 *et seq.* (Clean Streams Law); 35 P.S. § 721.1 *et seq.* (Pennsylvania Safe Drinking Water Act). The objective of the Clean Streams Law is "not only to prevent further pollution of the waters of the Commonwealth, but also to reclaim and restore to a clean, unpolluted condition every stream in Pennsylvania that is presently polluted...." 35 P.S. § 691.4. The term "waters of the Commonwealth" shall be construed to include "any and all rivers, streams, creeks, rivulets, impoundments, ditches, water courses, storm sewers, lakes, dammed water, ponds, springs and all other bodies or channels of conveyance of surface and underground water, or parts thereof, whether natural or artificial, within or on the boundaries of this Commonwealth." *Id.* § 691.1. The Clean Streams Law also confers upon the Department of Environmental Resources the power and authority to adopt and enforce "reasonable orders and regulations for the protection of *any source of water* for present or future supply to the public...." *Id.* § 691.501 (emphasis added).

Plaintiffs' claim for loss of use of their wells—separate and apart from any claim for costs for alternate potable water supplies, *see infra*—must be characterized as one for natural resource damages. While a governmental claim for natural resource damages and a private claim for provision of alternative water supplies are not "mutually exclusive remedies," *see Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. at 1288, plaintiffs have made no attempt to separate the two remedies or explain why they (as opposed to the State) are entitled to recover on the former claim. Indeed, in response to defendants' motion to dismiss, plaintiffs treat their claims for loss of the use of the wells and for costs associated with obtaining alternative water supplies *as a single claim. See* document 46 of record, at pp. 12–15. Thus, plaintiffs' separate claim for "loss of use of their wells" will be dismissed.

### (3) *Alternate, Potable Water Supplies*

■ Plaintiffs seek reimbursement for "costs of alternate, potable water supplies, including, but not limited to ongoing costs associated with municipal water" in paragraph 71(b). Defendants do not and, indeed, cannot argue that costs associated with provision of "alternative water supplies" are not appropriate response costs under CERCLA. *See* 42 U.S.C. § 9601(23) ("The terms 'remove' or 'removal' ... include[] ... provision of alternative water supplies"), § 9601(24) ("The terms 'remedy' or 'remedial action' means those actions consistent with permanent remedy taken instead of or in addition to removal actions.... The term includes ... provision of alternative water supplies"). Instead, defendants argue that "the full costs of providing plaintiffs with another source of water supply were paid for by EPA" and that any costs of "ongoing" municipal water supply are not appropriate response costs for provision of alternative water supplies. *See* document 39 of record, at pp. 19–22. As the court believes that such claims are more properly addressed by way of a fully supported motion for summary judgment, defendants' present motion to dismiss will be denied.

### (4) *Relocation Costs*

■ In paragraph 71(f) of their amended complaint, plaintiffs list "relocation costs"

as a response cost incurred as a result of defendants' conduct. Defendants argue that this claim must be dismissed because plaintiffs have not pleaded "that the President or EPA has made a reasoned determination approving the relocation." *See* document 39 of record, at pp. 22–23; *see also* 42 U.S.C. § 9601(24) ("The term ['remedy' or 'remedial action'] includes the costs of permanent relocation of residents ... where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare"). The court must reject this argument. The term "remove" or "removal" includes "temporary evacuation and housing of threatened individuals not otherwise provided for...." *Id.* § 9601(23). Such temporary relocation costs are not conditioned upon prior presidential approval. Thus, as it cannot be said that no set of facts could be established in support of plaintiffs' claim for "relocation costs," defendants' motion must be denied.

Defendant Continental White Cap also argues that Count I is deficient in that it contains "no allegation and it is not reasonably inferable that each of the 67 plaintiffs has incurred costs in each of the pleaded categories." *See* document 48 of record, at pp. 25–28 (citing *McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988)). This argument is equally unpersuasive. As stated above, plaintiffs have alleged each element necessary to state a claim under section 107. The allegations in Count I, in combination with the factual materials contained in the amended complaint, *see, e.g.,* document 27 of record, at ¶¶ 5–35 (list of plaintiffs), 51–66 (material

allegations of fact), are sufficient in that they "clearly provided general notice of the nature of the CERCLA claim." *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d at 1156 (distinguishing *McGregor, supra* ). The Federal Rules of Civil Procedure require no more at this stage of the proceedings. *See id.* at pp. 1155–1156; *see also Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (quoting Fed.R. Civ.P. 8(a)(2) ("all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests")).

## B. ·Citizen Suit

The citizen suit provision of CERCLA reads, in pertinent part, as follows:

> any person may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter....

42 U.S.C. § 9659(a). In Count II of their amended complaint, plaintiffs contend that defendants failed to notify the administrator of the EPA of the alleged releases and submitted falsified records to the Pennsylvania Department of Environmental Resources, all in violation of section 103 of CERCLA, 42 U.S.C. § 9603. *See* document 27 of record, at ¶¶ 73–81. Plaintiffs seek civil penalties not exceeding $25,000 for each violation. *See id.* at ¶ 81.

Defendants' main argument in opposition to plaintiffs' CERCLA citizen suit is that the count is barred by *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). In construing the citizens suit provision in the Clean Water Act, 33 U.S.C. § 1251 *et seq.*,[2] the *Gwaltney* Court concluded as follows:

---

**2.** The citizen suit provision of the Clean Water Act reads as follows:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent per-

mitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

> (2) against the Administrator where there is alleged a failure of the Administrator to per-

The most natural reading of "to be in violation" is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Congress could have phrased its requirement in language that looked to the past ("to have violated"), but it did not choose this readily available option.

*Gwaltney*, 108 S.Ct. at 381. In support of this conclusion, the Supreme Court noted that (1) Congress used identical language in the citizen suit provisions of several other environmental statutes that authorize only prospective relief, *see id.;* (2) the pervasive use of the present tense throughout the CWA's citizen suit provision indicates the prospective orientation of the provision, *see id.* at 382–383; and (3) the legislative history of the CWA is replete with references to the Act's citizen suit provisions as "abatement" provisions or as injunctive measures, *see id.*, at 383–384.

These same factors compel the conclusion that a citizen suit under CERCLA may not be based on wholly past violations. First, the present tense is used almost exclusively in section 310. A citizen suit may be brought against any person "who is alleged to be in violation of" any substantive provision of CERCLA. *See* 42 U.S.C. § 9659(a)(1). The court has jurisdiction "to order such action as may be necessary to correct the violation...." *Id.* § 9659(c). No action may be commenced before sixty days after a plaintiff "has given notice of the violation" to the violator, the President, and "[t]he State in which the alleged violation occurs...." *Id.*

Second, any other reading would render incomprehensible the notice provision of section 310. *See* 42 U.S.C. § 9659(d). The provision states that "[n]o action may be commenced ... before 60 days after the plaintiff has given notice of the violation" to the President, the state in which the alleged violation occurs, and any alleged violator. *Id.* § 9659(d)(1). No action may be commenced "if the President has commenced and is diligently prosecuting an action under [CERCLA], or under the Solid Waste Disposal Act ... to require compliance with the standard, regulation, condition, requirement, or order concerned...." *Id.* § 9659(d)(2). As noted in *Gwaltney*,

[i]t follows logically that the purpose of notice to the alleged violator is to give an opportunity to bring itself into complete compliance with the Act and thus render unnecessary a citizen suit. If we assume, as respondents urge, that citizen suits may target wholly past violations, the requirement of notice to the alleged violator becomes gratuitous.

*Gwaltney*, 108 S.Ct. at 382–383.

Last, the legislative history of CERCLA provides additional support for the conclusion that a citizen suit may not be brought based on a wholly past violation. In explaining CERCLA's citizen suit provisions, references were made to similar provisions in other federal environmental statutes, including the Clear Air Act, 42 U.S.C. § 7604, RCRA, 42 U.S.C. § 6972, and the Toxic Substances Control Act, 15 U.S.C. § 2619. *See* 1986 U.S. Code Cong. & Admin. News 2835, 3056–3057, 3206. In addition, Members of Congress characterized the provision as an abatement provision or one meant to force compliance with the Act. *See id.* at pp. 2926, 3059–3060 ("Those suits may also be bought for injunctive relief only.... None of these actions are for money damages. They are actions directly related to the principal purpose of the Superfund law—i.e., to bring about quick identification and effective clean-up of dangerous hazardous waste sites"), 3063 ("the purpose of the Superfund law is to provide a Federal response to the urgent need to *clean up* existing hazardous waste sites.... This House has consistently rejected expanding the Superfund statute to

---

form any act or duty under this chapter which is not discretionary with the Administrator. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a).

deal with legal rights aimed at compensation for damages arising out of injuries caused by the toxic substances involved"). While CERCLA's legislative history "furnishes at best a sparse and unreliable guide to the statute's meaning," *see Artesian Water Co. v. Government of New Castle County*, 851 F.2d at 648, for all the reasons cited above, the court concludes that the citizens suit provision of CERCLA does not confer federal jurisdiction over actions based on wholly past violations. *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., supra.*

In response to defendants' argument, plaintiffs advance several contentions. First, they argue that, even if *Gwaltney* applied to CERCLA generally, "it could not logically prohibit citizens' suits for failure to notify of a release." *See* document 46 of record, at p. 17. Second, plaintiffs contend that a liberal construction of their averments results in their complying with the dictates of *Gwaltney. See id.* at pp. 18–19. Finally, plaintiffs request leave to amend, if necessary, in order to allege a continuing violation of CERCLA. *See id.* at pp. 26, 29–30.

The court cannot agree that *Gwaltney* does not apply to a claimed violation of section 103 of CERCLA, 42 U.S.C. § 9603. According to the citizen suit provision and the dictates of *Gwaltney*, in order to state a claim under CERCLA, plaintiffs must allege a continuous or intermittent violation of any standard, regulation, condition, requirement, or order imposed by CERCLA. Thus, with respect to Count II and the notice requirement of section 103, *see id.* § 9603(a), plaintiffs must allege that defendants failed to notify the proper authorities of the alleged release and that this failure to notify survived beyond the filing of the complaint (*i.e.*, that as of the date of the filing of the complaint, defendants had not notified the proper authorities of the release). With regard to the record keeping requirements, *see id.* § 9603(d)(2), plaintiffs must allege that, as of the date of the filing of the complaint, defendants knowingly destroyed, mutilated, erased, disposed of, concealed, or otherwise rendered unavailable or unreadable or falsified any

records identified in section 103(d)(1), 42 U.S.C. § 9603(d). If plaintiffs make such allegations in good faith, *see Gwaltney*, 108 S.Ct. at 385, they should be permitted to proceed on this Count.

The court must also disagree that plaintiffs' amended complaint, when liberally construed, satisfies the *Gwaltney* pleading requirements. As noted in defendants' supporting brief, Count II is written almost entirely in the past tense. *See* document 39 of record, at pp. 29–30; *see also* document 27 of record, at ¶¶ 73–81. In addition, there is no allegation that any violations of CERCLA by defendants continued beyond the filing of the complaint or are likely to reoccur in the future. Thus, the amended complaint as it now stands is defective.

■ Plaintiffs request leave to file a second amended complaint. *See* document 46 of record, at pp. 29–30. They claim that additional materials have been revealed in discovery and that they "intend to prove that defendants have engaged in illegal environmental activities, creating a continuing threat of harm to plaintiffs." *Id.* at pp. 26, 29–30. Because the court cannot say at this point that plaintiffs' attempt to amend would be futile, *see Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) (court has discretion to deny leave to amend where the proposed amendment would not withstand a motion to dismiss), plaintiffs' request for leave to amend in order to eliminate the *Gwaltney* defect will be granted pursuant to Fed.R.Civ.P. 15(a).

■ Because plaintiffs may reassert their CERCLA citizens suit in their second amended complaint, the court will address defendants' remaining arguments directed to Count II. Defendant Chromatex argues that Count II is also defective because plaintiffs have failed to allege the release of a "reportable quantity" of hazardous substances under section 103. *See* document 39 of record, at pp. 33–34; *see also* 42 U.S.C. § 9603(a) (releases "in quantities equal to or greater than those determined

pursuant to section 9602 of this title"). Plaintiffs respond by arguing that such an allegation is incorporated into the Count by reference. *See* document 46 of record, at pp. 19–21. Assuming the Count is technically defective, the defect can easily be cured by plaintiffs in their second amended complaint by an express citation to section 102 of CERCLA.

■ Defendant Continental contends that it cannot be found in violation of section 103(d), which makes it "unlawful for any ... person knowingly to destroy, mutilate, erase, dispose of, conceal, or otherwise render unavailable or unreadable or falsify any records" which the EPA specifies *through regulation* shall be retained by such persons, *see* 42 U.S.C. § 9603(d)(2) (emphasis added), because the EPA has yet to promulgate any rules or regulations pursuant to section 103. *See* document 48 of record, at p. 7–10. Continental also contends that the amended complaint is defective in that it does not allege that defendants were persons subject to the record keeping requirement of section 103(d). *See* document 58 of record, at pp. 2–6. As the court agrees with the latter argument, Continental's motion to dismiss paragraph 79 will be granted.

Section 103(d)(2), quoted above, applies to "any records identified in paragraph (1) of this subsection." *Id.* Section 103(d)(1), in turn, provides as follows:

(1) The Administrator of the Environmental Protection Agency *is authorized to promulgate rules and regulations specifying*, with respect to—

(A) the location, title, or condition of a facility, and

(B) the identity, characteristics, quantity, origin, or condition (including containerization and previous treatment) of any hazardous substances contained or deposited in a facility;

*the records which shall be retained by any person required to provide the notification of a facility set out in subsection (c) of this section.* Such specification shall be in accordance with the provisions of this subsection.

*See id.* § 9603(d)(1) (emphasis added). Finally, subsection (c) reads, in pertinent part, as follows:

*Within one hundred and eighty days after December 11, 1980,* any person who owns or operates or who at the time of disposal owned or operated, or who accepted hazardous substances for transport and selected, a facility at which hazardous substances (as defined in section 9601(14)(C) of this title) are or have been stored, treated, or disposed of shall, unless such facility has a permit issued under, or has been accorded interim status under, subtitle C of the Solid Waste Disposal Act [42 U.S.C.A. § 6921 et seq.], notify the Administrator of the Environmental Protection Agency of the existence of such facility, specifying the amount and type of any hazardous substance to be found there, and any known, suspected, or likely releases of such substances from such facility.

*Id.* § 9603(c) (emphasis added). Defendant Continental argues that "[t]his notification [was] a 'one time' requirement which was to be provided to the EPA on or before June 9, 1981," *see* document 58 of record, at p. 4 (citing 46 Fed.Reg. 22144 (April 15, 1981) (attached as Exhibit A to document 58)) and that it was not subject to the requirement. *Id.* at p. 6. The court believes that plaintiffs should be required to allege in good faith that defendant Continental was subject to the requirements of sections 103(c) and (d). Thus, the motion to dismiss will be granted, with leave to amend given to plaintiffs.

■ Continental also contends that a citizen suit under CERCLA does not lie for statutory violations except against federal officials for the failure to perform statutory duties. *See* document 48 of record, at pp. 10–11. The clear language of section 310 belies this argument. The statute permits a suit against any person "who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter...." 42 U.S.C. § 9659(a)(1). The provision is sufficiently broad to include the statutory requirements of section 103. The fact that a citizen may sue the

President or the Administrator of the EPA "where there is an alleged failure ... to perform any act or duty under this chapter," *see* 42 U.S.C. § 9659(a)(2), does not have any bearing on a citizen's right to sue for a private party's statutory violation pursuant to section 310(a)(1).

■ Defendant Continental's final argument as to Count II is that plaintiffs failed to comply with the notice requirements of section 310 of CERCLA. *See* 42 U.S.C. § 9659(d). The court must disagree. As stated in *Proffit v. Commissioners, Township of Bristol,* 754 F.2d 504 (3d Cir. 1985),

> [t]he purpose of the sixty-day notice requirement is to obviate the need for resort to the courts by prompting either administrative enforcement of the laws or voluntary compliance by alleged violators....
>
> Nevertheless, these citizen suit provisions evince a legislative intent that "citizen[s] are not to be treated as nuisances or troublemakers but rather as welcome participants in the vindication of environmental interests."... Mindful of this legislative intent, this and other courts have consistently held that the sixty-day notice provisions should be applied flexibly to avoid hindrance of citizen suits through excessive formalism.

*Id.* at 506 (citations omitted). In the instant case, notice was sent to defendant's plant manager at the Valmont Industrial Park. It charged violations of CERCLA and RCRA in that defendants, *"inter alia,"* knowingly falsified records and failed to comply with all standards and requirements imposed by RCRA. *See* document 55 of record, Exhibit C. The notice also lists the names, business addresses, and telephone numbers of plaintiffs' counsel and states that "[a]ny questions regarding this notice or any proposed amicable resolutions" should be directed to counsel

for plaintiffs. *See id.* Finally, defendant has not established prejudice from the notice in attempting to resolve this matter before litigation or to meet the allegations in plaintiffs' complaint. Thus, the court concludes that defendant "had sufficient actual notice of the alleged violations to respond in an adequate fashion to plaintiffs." *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531, 1536 (M.D.Pa. 1985) (Caldwell, J.).

RCRA

■ Defendants also contend that wholly past violations of RCRA cannot be the subject of a citizen suit under section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A).[3] This argument is even stronger with respect to RCRA than with CERCLA. In *Gwaltney,* the Supreme Court specifically mentioned RCRA as an environmental statute that authorizes only prospective relief. *See Gwaltney,* 108 S.Ct. at 381 & n. 2. In addition, every court that has analyzed section 7002 in the wake of *Gwaltney* has concluded that an allegation of either a continuous or intermittent violation is required. *See Ascon Properties, Inc. v. Mobil Oil Co., supra; Coburn v. Sun Chemical Corp., supra* ("The *Gwaltney* Court's interpretation of the phrase 'to be in violation' contained in the citizen suit provision of the Clean Water Act applies with equal fervor to the very identical phrase contained in the citizen suit provision of RCRA.... Thus, we find that Section 7002(a)(1)(A) of RCRA bars any suit based on 'wholly past' violations of RCRA"); *McClellan Ecological Seepage Situation v. Weinberger,* 707 F.Supp. 1182, 1187 (E.D.Cal.1988) ("The citizen suit provisions of RCRA and the Clean Water Act are forward-looking; they are intended to remedy present and future harmful impacts, not conduct that has occurred entirely in the past and cannot reasonably be expected to result in future harm").[4]

---

**3.** "[A]ny person may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter...." 42 U.S.C. § 6972(a)(1)(A).

**4.** In *United States v. Aceto Agricultural Chemicals Corp.,* 699 F.Supp. 1384 (S.D. Iowa 1988), *aff'd in part, rev'd in part,* 872 F.2d 1373 (8th Cir.1989) the court, in a footnote, stated as follows: "The court has reviewed [the *Gwaltney* decision] and believes the statutory scheme of RCRA is so different from the Clean Water Act

Section 3010 of RCRA, 42 U.S.C. § 6930, imposes a notification requirement similar to that contained in section 103 of CERCLA, 42 U.S.C. § 9603. Citing *McClellan Ecological Seepage Situation v. Weinberger, supra,* plaintiffs argue that their claims for violations of section 3010 of RCRA, "by their nature, are 'wholly past.'" *See* document 46 of record, at pp. 23–24. Again, the court must disagree. In order to bring a citizen suit based on a violation of section 3010, plaintiff must allege a failure to notify that continued past the filing of the complaint. *See supra* at pp. 21–22.

*McClellan* does not hold otherwise. In that case, the plaintiffs argued that the defendant had violated section 3010 by omitting from the notification submitted to the EPA any mention of hazardous wastes that were stored in waste pits at defendant's facility. The defendant responded that the notification requirement was not meant to cover wastes stored in such waste pits. Thus, it is obvious from the defendant's argument in *McClellan* that no notice had been provided and that the failure to notify continued past the filing of the complaint. *See McClellan,* 707 F.Supp. at 1189.

Plaintiffs seek leave to amend to meet the *Gwaltney* pleading requirements. *See* document 46 of record, at pp. 24–27, 29–30. Pursuant to Fed.R.Civ. P. 15, that request will be granted. Thus, it again becomes necessary to address the remaining arguments raised by defendants with respect to this Count.

 Under section 3006 of RCRA, 42 U.S.C. § 6926, a state is authorized to develop a state hazardous waste program. Upon the approval of the Administrator of the EPA, "[s]uch State is authorized to carry out such program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste...." *Id.* § 6926(b). Any action taken by a state under a hazardous waste program authorized by section 3006 of RCRA "shall have the same force and effect as action taken by the Administrator...." *Id.* § 6926(d).

Pennsylvania received authorization to operate its hazardous waste program in lieu of the federal program effective January 30, 1986. *See* 51 Fed.Reg. 1791 (Jan. 15, 1986) (attached as Exhibit C to document 48 of record). Continental argues that Count III fails to state a claim in that it alleges only violations of federal law which has been displaced by state law pursuant to section 3006. While there exists no case law directly addressing this issue, the court believes such a conclusion is, with one exception, mandated by the plain meaning of the statute.

Section 3006 clearly states that, upon final authorization, a state "is authorized to carry out such program in lieu of the Federal program under this subchapter [*i.e.,* subchapter III of Title 42, Chapter 82] in such State...." 42 U.S.C. § 6926(b). With the exception of paragraph 85(e) of Count III in the amended complaint, the violations that plaintiffs allege defendants have committed are found in the applicable subchapter and have thus been superseded by Pennsylvania's state program. *Cf. Thompson v. Thomas,* 680 F.Supp. 1, 3 (D.D.C.1987) ("The EPA has authorized the State of Wisconsin to administer and enforce its own hazardous waste program in lieu of the federal program dealing with hazardous wastes. Thus, the violations which the plaintiff alleges 3M has committed under the federal regulations promulgated under RCRA have been superseded in Wisconsin by the state regulations"). These paragraphs must therefore be dismissed. In paragraph 85(e), however, plaintiffs allege "open dumping" in viola-

---

that the decision provides little assistance in resolving this problem." *Id.* at 1391 n. 5. The court in *Aceto* was faced with a suit by the Administrator of the EPA to abate "an imminent and substantial endangerment to health or the environment" pursuant to section 7003(a) of RCRA, 42 U.S.C. § 6973(a), rather than a citizen

suit pursuant to section 7002 of RCRA. On that basis alone it is distinguishable from the instant action. To the extent, however, that *Aceto* holds generally that the Court's decision in *Gwaltney* does not apply to a RCRA citizen suit, this court respectfully declines to follow it.

tion of section 4005 of RCRA, 42 U.S.C. § 6945. As this provision is not part of the same subchapter, but is instead found in subchapter IV, the motion to dismiss will be denied as to paragraph 85(e).

Plaintiffs attempt to save Count III from Continental's challenge by arguing that, even after final authorization, "the substantive statutory requirements of RCRA remain in place, regardless of which authority promulgates regulations thereunder." *See* document 55 of record, at p. 7. Plaintiffs have cited no authorities in support of this argument, and the court finds no support for it in the statute or the regulations promulgated thereunder. The statute speaks of the displacement of the federal *program* established under subchapter III, not solely of federal regulations. As illustrated by the regulations outlining the state program requirements, a program consists, *inter alia*, of "all applicable State statutes and regulations...." *See* 40 C.F.R. § 123.21(a)(5) (elements of a program submission); *see also id.* § 123.23(a) ("Any State that seeks to administer a program under this part shall submit a statement from the State Attorney General ... that the laws of the State, or an interstate compact, provide adequate authority to carry out the program.... This statement shall include citations to the specific statutes, administrative regulations, and, where appropriate, judicial decisions which demonstrate adequate authority").

Plaintiffs also rely on the EPA's continuing enforcement authority to refute Continental's argument. *See* document 55 of record, at p. 7. Such reliance is misplaced. The EPA's enforcement authority is expressly reserved in the statute itself, *see* 42 U.S.C. § 6928(a)(1), (2); *see also Wyckoff Co. v. Environmental Protection Agency*, 796 F.2d 1197, 1199–1201 (9th Cir.1986), as is dual federal-state enforcement of the Hazardous and Solid Waste Amendments of 1984. *See* 42 U.S.C. § 6926(g). No such reservation is found in connection with RCRA's citizen suit provision. Thus, Continental's motion to dismiss will be granted as to paragraph 85(a)–(d) of the amended complaint.

The court takes no position as to plaintiffs' ability to cure this defect by simply substituting the state provisions for the corresponding superseded federal statute. In *Thompson v. Thomas, supra,* the court held that "the alleged violations by [defendant] of the Wisconsin regulations should be brought in the Wisconsin state courts pursuant to Wisconsin law." *Thompson,* 680 F.Supp. at 3. In *McClellan Ecological Seepage Situation v. Weinberger,* however, the court noted that it was at least arguable that a state statute "could ... have become effective pursuant to RCRA," thus making a citizen suit proper, "if it is part of a state hazardous waste program that has been authorized by EPA under section 3006 of RCRA...." *McClellan,* 707 F.Supp. at 1190–1191. As the issue is not presently before the court, no opinion will be expressed on the matter.

STATE LAW CLAIMS

### A. *Negligence Per Se*

■ In paragraph 89 of the amended complaint, plaintiffs allege negligence *per se* based on defendants' violations of the Pennsylvania Clean Streams Law (CSL), 35 P.S. §§ 691.1–691.1001, and the Pennsylvania Solid Waste Management Act (SWMA), 35 P.S. §§ 6018.101–6018.1003. *See* document 27 of record, at ¶ 89(1). Defendants argue that neither statute creates a private cause of action and that plaintiffs cannot circumvent this fact "by couching an otherwise nonexistent cause of action in terms of 'negligence *per se.'* " *See* document 39 of record, at pp. 38–46. The court must agree with defendants.

It appears settled in Pennsylvania that neither the CSL nor the SWMA provides for a private cause of action for damages. *See City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1150–1151 (E.D. Pa.1982) (CSL); *Fleck v. Timmons,* 374 Pa.Super. 417, 422–426, 543 A.2d 148, 151–153 (1988) (SWMA). As stated by the *Stepan Chemical* court,

The statutory provisions [of the CSL] upon which the City relies do not expressly authorize an action for damages. Rather, they permit only "suits to abate

... nuisances"; "suits to restrain or prevent any violation of this act," and civil actions "to compel compliance with this act." It is abundantly clear, then, that subsections (a) and (c) of [35 P.S. § 691.601][5] contemplate only actions for the abatement of a public nuisance or, alternatively, an enforcement action brought by a party adversely affected by another's noncompliance with the statute. Where, as here, "legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."... In the absence of more explicit authorization from the General Assembly, I am not free to engraft an additional right of action upon statutory provisions which do not contemplate such a right.

*City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. at 1150 (citations omitted). Similarly, the *Fleck* court held as follows:

Article VI [of the SWMA] is entitled: "Enforcement and Remedies." When Article VI is read in its entirety, it is clear that our legislature intended to provide the DER with "wide-ranging enforcement tools" so that the SWMA would, in reality, have the means to accomplish the invaluable ends for which it was enacted: the prevention of harm to public health and the preservation of our environment.... Throughout Article VI of the SWMA, the legislature consistently states that it is the "department", the DER, which shall be responsible for pursuing the specific remedies and enforcement techniques set forth in Article VI.... Thus, the SWMA, by its express terms, restricts the right to seek relief for the violation of its provisions to the DER.... Even though the SWMA is a remedial statute, to be construed liberally, this principle does not justify an interpretation of the statute which is inconsistent with its express language.

\* \* \* \* \* \*

When ascertaining the legislative intent underlying [35 P.S. § 6018.611][6], we

---

5. Section 601 of the CSL provides, in part, as follows:

(a) Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances. In addition, suits to abate such nuisances or suits to restrain or prevent any violation of this act may be instituted in equity or at law in the name of the Commonwealth upon relation of the Attorney General, or upon relation of any district attorney of any country, or upon relation of any municipality affected, after notice has first been served upon the Attorney General of the intention of the district attorney or solicitor to so proceed. Such proceedings may be prosecuted in the Commonwealth Court, or in the court of common pleas of the county where the activity has taken place, the condition exists, or the public is affected, and to that end jurisdiction is hereby conferred in law and equity upon such courts: Provided, however, That no action shall be brought by such district attorney or solicitor against any municipality discharging sewage under a permit of the department heretofore issued or hereafter issued under this act: And provided further, That, except in cases of emergency where, in the opinion of the court, the exigencies of the cases require immediate abatement of said nuisances, the court may, in its decree, fix a reasonable time during which the person or municipality responsible for the nui-

sances may make provision for the abatement of the same.

\* \* \* \* \* \*

(c) Except as provided in subsection (e), any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act against the department where there is alleged a failure of the department to perform any act which is not discretionary with the department or against any other person alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act. Any other provision of law to the contrary notwithstanding, the courts of common pleas shall have jurisdiction of such actions, and venue in such actions shall be as set forth in the Rules of Civil Procedure concerning actions in assumpsit.

35 P.S. § 691.601(a), (c).

6. § 6018.611. Presumption of law for civil and administrative proceedings

It shall be presumed as a rebuttable presumption of law that a person or municipality which stores, treats, or disposes of hazardous waste shall be liable, without proof of fault, negligence, or causation, for all damages, contamination or pollution within 2,500 feet of the perimeter of the area where hazardous waste activities have been carried out. Such presumption may be overcome by clear and convincing

are bound to consider Article VI of the SWMA as a whole and avoid according Section 611 an interpretation which does not take into account related sections of Article VI.... It is clear to us that the legislature did not intend to allow the legal presumption created in Section 611 of the SWMA to be used in any legal proceeding other than a proceeding instituted by the DER, wherein the DER charges a municipality or a person with a violation of the SWMA or its regulations. *To hold otherwise would be to allow private citizens to recover for hazardous waste activities with no proof of fault, negligence, or causation.* Such a result is contrary to the specific language of 35 P.S. § 6018.607 ["Existing rights and remedies preserved; cumulative remedies authorized"] and flys in the face of Article VI of the SWMA which, as we have recognized, reposes "... in the legislative branch (DER, county health departments and municipalities) broad powers of and responsibilities for enforcement and has given the prosecutors a vast array of legal mechanisms with which to battle the tide of pollution and environmental catastrophe that has accompanied man's 'progress' toward a highly mechanized, industrial and disposable society."

*Fleck v. Timmons,* 374 Pa.Super. at 423–426, 543 A.2d at 151–152 (citations omitted) (emphasis added).

The issue of whether a plaintiff can assert a cause of action based on negligence *per se* is closely related to the question of whether a private cause of action exists under a statute. As stated by the Third Circuit Court of Appeals,

[m]ost formulations of the standards for implying a private cause of action center on the presence or absence of a legislative intent to impose civil liability. In theory, at least, application of the negligence *per se* doctrine represents a judicial policy judgment independent of legislative intent with respect to the imposition of civil liability. Both, however, address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damage liability.

*Frederick L. v. Thomas,* 578 F.2d 513, 517 n. 8 (3d Cir.1978); *see also* Prosser and Keeton, *Torts* § 36 (5th ed.1984) ("the courts are seeking, by something in the nature of judicial legislation, to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature had in mind. The statutory standard of conduct is simply adopted voluntarily, out of deference and respect for the legislature"). With regard to the CSL and SWMA, Pennsylvania's General Assembly obviously intended to limit a private citizen's right to enforce the terms of the Act by vesting enforcement authority in the DER. At the same time, however, the General Assembly expressly provided that nothing contained in the Acts "shall in any way abridge or alter rights of action or remedies now or hereafter existing in equity, or under the common law or statutory law, criminal or civil...." *See* 35 P.S. § 6018.607; 35 P.S. § 691.701; *see also City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. at 1150 n. 30; *Fleck v. Timmons,* 374 Pa.Super. at 424–425, 543 A.2d at 152. Thus, the legislature obviously had the rights of private citizens in mind when it drafted the Acts but elected to protect those rights by way of existing common law remedies, such as actions for negligence and nuisance. Far from acting out of deference and respect to the legislature, *see* Prosser and Keeton, *supra,* the court would be going against the expressed intentions of the legislature by permitting plaintiffs' negligence *per se* claim to proceed. Defendants' motion to dismiss this claim, therefore, will be granted.

### B. *Nuisance Per Se*

Count VI of plaintiffs' amended complaint reads as follows:

35 P.S. § 6018.611.

evidence that the person or municipality so charged did not contribute to the damage, contamination, or pollution.

96. Defendants' above-averred acts and omissions have created a nuisance condition in and around the Chromatex and Continental sites.

97. Defendants' above-averred acts and omissions comprise a nuisance *per se*, pursuant to the provisions of the Pennsylvania Clean Streams Law and the Pennsylvania Solid Waste Management Act, and the Pennsylvania Hazardous Substance Control Act.

98. As a result of said nuisance, plaintiffs have suffered the harm averred herein above.

*See* document 27 of record, at ¶¶ 96–98. Analysis of this count is slightly different from plaintiffs' negligence *per se* claim in that both the CSL and SWMA contain provisions declaring violations to be "public nuisances." *See* 35 P.S. § 691.3; 35 P.S. § 6018.601. Nevertheless, defendants contend that plaintiffs lack standing to bring an action for damages for public nuisance. *See* document 39 of record, at pp. 47–49.

Plaintiffs response to defendants' motion is most confusing. They first argue that Count VI states a traditional common law nuisance without reference to the statutes. *See* document 46 of record, at p. 36. Plaintiffs then quote the statutes in support of their nuisance *per se* claim. *See id.* at pp. 36–37. Finally, plaintiffs made no attempt to counter defendants' argument that standing is here lacking because plaintiffs have not suffered any harm *"in the exercise of rights common to the general public."*

Rather than analyze claims that plaintiffs may not in fact be making, the court will require plaintiffs to clarify their nuisance claim in their second amended complaint. They will be required to specify whether their claim is one of private nuisance, public nuisance, or both. The amended complaint must allege all the elements of the appropriate nuisance claim, including standing. In the event defendants remain dissatisfied following the submission of the second amended complaint, they may then attack the nuisance claim by way of a second motion to dismiss or by a properly supported summary judgment motion.

C. *Breach of Restrictive Covenants*

■ Defendants obtained their ownership of the sites in question subject to a restrictive covenant entered upon the land prior to 1979 by the Greater Hazleton Community Area New Development Organization. *See* document 27 of record, at ¶ 103; *see also* document 1 of record, Exhibit A. Plaintiffs allege that they are entitled to the benefits and protection of the covenant and that the acts and omissions of defendants comprise material breaches of the covenant. *See* document 27 of record, at ¶¶ 104–105. In their motion to dismiss, defendants contend that plaintiffs have no standing to assert a claim for any breach of this covenant. *See* document 39 of record, at pp. 49–56.

Covenants that restrict the use of property, although not favored by the law, are legally enforceable. *Morean v. Duca*, 287 Pa.Super. 472, 475, 430 A.2d 988, 990 (1981).

> The right of a person not a party thereto to enforce in equity a restriction on the use of property depends on whether or not the restrictive covenant or agreement was imposed on the land owned by defendant for the benefit of the land owned by plaintiffs who are seeking to enforce the restriction. . . . The question is determined largely by the intention of the parties, and it must appear from the terms of the grant or from the situation of the parties and the surrounding circumstances that it was the intention of the grantor, when inserting the restriction, to create . . . [an] equity . . . which would inure to the benefit of complainant's land and equitably be annexed as an appurtenance.

*Fey v. Swick*, 308 Pa.Super. 311, 316, 454 A.2d 551, 554 (1982) (quoting *Appeal of J.C. Grille, Inc.*, 181 Pa.Super. 456, 463–464, 124 A.2d 659, 664 (1956)); *see also Dreher Township Board v. Solitron Development Co., Inc.*, 333 Pa.Super. 33, 39–40, 481 A.2d 1207, 1211 (1984). In the instant case, an intention to benefit plaintiffs does not clearly appear from the

terms of the grant itself. *See* document 1 of record, Exhibit A. Nevertheless, plaintiffs request leave for discovery into "the situation of the parties and the surrounding circumstances" at the time the restriction was created. *See* document 46 of record, at pp. 38–39. As the court cannot unequivocally state that plaintiffs can prove no set of facts in support of their claim, their request will be granted and defendants' motion to dismiss must, accordingly, be denied.

### D. *Strict Liability*

■ In paragraph 108 of their amended complaint, plaintiffs allege that "[d]efendants' use, handling, storage, generation and disposal of hazardous substances and hazardous wastes comprise ultrahazardous and/or abnormally dangerous activities which subject defendants to strict liability for all harm resulting therefrom." *See* document 27 of record, at ¶ 108; *see also* Restatement (Second) of Torts § 519–520 (1965).[7] Defendants argue that the generation, treatment, handling, and storage of hazardous substances and hazardous waste "do[es] not constitute unreasonably dangerous activities as recognized by Pennsylvania law and the claim should be dismissed." *See* document 39 of record, at pp. 56–59. As in *Piccolini v. Simon's Wrecking*, 686 F.Supp. 1063 (M.D.Pa.1988) (Conaboy, J.), the court believes that this argument is better left for a summary judgment motion following the development of a more complete record. *See id.* at 1069–1070 ("there are many factors that come into the equation when attempting to determine whether an activity is abnormally

dangerous, and to properly analyze the question and issues involved the Court will require a more complete record"). Indeed, the cases cited by defendants in support of their argument deal primarily with summary judgment motions or with a court's refusal to charge the jury on strict liability following the presentation of evidence at trial. *See* document 39 of record, at pp. 57–59 and authorities cited therein. Thus, defendants' motion to dismiss must be denied.

### E. *Physical Injury Allegation*

■ Defendants also contend that plaintiffs' claims for emotional distress, fear of injury and disease, loss of enjoyment of life's pleasures, medical monitoring and surveillance, and increased risk of cancer and other diseases must be dismissed for failure to allege "any actual, present physical injury." *See* document 39 of record, at pp. 60–70. Defendants argue that physical injury is a prerequisite to recovering damages for such claims. Assuming *arguendo* that defendants' argument is legally sound, their motion to dismiss must still be denied. In their amended complaint, plaintiffs state that they "have suffered, and will continue to suffer harm and expenses, including, but not limited to ... personal injury ...." *See* document 27 of record, at ¶ 66. This allegation is incorporated by reference into each of the pendent state claims. In opposition to the motion to dismiss, plaintiffs assert that they have alleged and intend to prove the existence of a physical injury. *See* document 46 of record, at p. 43. Since the court cannot state that plaintiffs will be

---

**7.** Section 519 of the Restatement provides as follows:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has executed the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts § 519 (1965). In turn, section 520 defines "abnormally dangerous activity" in the following manner:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* § 520.

unable to establish any set of facts in support of their claims that would entitle them to relief, the motion to dismiss must be denied.

REQUEST FOR MORE DEFINITIVE STATEMENT

In their amended complaint, plaintiffs initially make reference to two separate sites—Chromatex Plant # 2 and Continental White Cap Inc.'s Valmont facility. *See* document 27 of record, at ¶ 57. In later paragraphs, plaintiffs use the term "site" without any indication of which of the two sites is being addressed. *See id.* at ¶¶ 66, 75–77, 85, 89(m), 94(h), and 103. Defendants contend that plaintiff should be required to clarify the term "site" as used in these later paragraphs. *See* document 39 of record, at pp. 70–71. In response, plaintiffs assert that "[a]ny defects in this regard would be cured by a stipulated amendment." *See* document 46 of record, at p. 46. Since plaintiffs will be required to file a second amended complaint, they can clarify their use of the term "site" in that document.

CONCLUSION

Defendants' motions to dismiss will be granted as to the following counts: Count II (CERCLA citizens suit), Count III (RCRA citizens suit), and Count VI (nuisance). In addition, the motions will be granted as to the following paragraphs in the amended complaint: 71(a) (biological monitoring), 71(e) (loss of use of wells), and 89(1) (negligence *per se* ). In all other respects, the motions to dismiss will be denied. Defendants' motion for a more definitive statement regarding the term "site" will also be granted. Plaintiffs will be given leave to file a second amended complaint within twenty (20) days from the date of the accompanying Order to attempt to correct any and all defects discussed in this Memorandum.

An appropriate Order will enter.