684 A.2d 570

**Ursula Stiglich WAGNER, In Her Own Right, as Parent and Next Friend of Joshua, Justin and Jessica Wagner, Minors and on Behalf of All Others Similarly Situated and Gregory and Jeanette Antczak, H/W, In Their Own Right and as Parents and Next Friends of Gregory R. and Alison M. Antczak, Minors and on Behalf of All Others Similarly Situated et al., Appellants,**

**v.**

**ANZON, INC. (In Its Own Right and as Successor In Interest To Associated Lead, Inc.) and NL Industries, Inc. (In Its Own Right and as Successor In Interest To National Lead Co.), Appellees.**

Superior Court of Pennsylvania.

Argued June 11, 1996.

Filed Sept. 6, 1996.

Reargument Denied Nov. 12, 1996.

620

624

Laurence S. Berman, Philadelphia, for appellants.

Philip S. Beck, Chicago, IL, for appellees.

Before BECK, KELLY and SCHILLER, JJ.

SCHILLER, Judge.

This is an appeal from an order of the trial court denying appellants'[1] post-trial motions for judgment notwithstanding the verdict and a new trial, and allowing entry of judgment on the verdict for appellee. We affirm.

FACTS:

Appellee, NL Industries, and its successor, Anzon, Inc., operated a lead processing plant located at 2545 Aramingo Avenue in the City of Philadelphia beginning in 1906. Appellee operated the plant from 1960 to 1979; Anzon, Inc. and its successors have operated the plant since October 1979.[2] Appellants are a class composed of individuals, firms and entities who lived or worked within a half-mile radius of the plant. Appellants filed suit, stating causes of action in negligence, strict liability for ultrahazardous activities, and nuisance, and sought compensatory and punitive damages for environmental remediation, personal injury, property damage, and medical monitoring for twelve representative plaintiffs and the class as a whole.

During the course of a 42 day trial, the jury heard the testimony of over 30 witnesses, including 10 experts, on the effects of lead on the children located within the class area, and the emissions from appellee's lead processing plant. Included within this testimony was evidence of lead levels in the soil and air in the area surrounding the plant, as well as levels of lead in the blood of the individual plaintiffs. Both sides presented evidence comparing the lead emissions from the plant with the applicable requirements of the Philadelphia Air Management Code.

The trial court granted a directed verdict in favor of appellees on appellants' claims based on medical monitoring and negligence *per se.* Prior to the conclusion of trial, a settlement was reached between the appellants and defendant

---

1. The appellants were the plaintiffs at trial.

2. Anzon, a defendant below, is not a party to this appeal.

Anzon; however, the liability of Anzon was submitted to the jury for the purposes of apportionment of liability. On December 9, 1994, the jury found defendant Anzon negligent and awarded damages,[3] but found no negligence on the part of appellee. Appellants filed motions for a new trial and for judgment notwithstanding the verdict. These were denied by the trial court on April 28, 1995.

Appellants now raise five questions on this appeal, which we set out in the order they are addressed: (1) whether it was error for the trial court to grant a directed verdict on the negligence *per se* claim; (2) whether the trial court erred in granting defendants' motion for directed verdict on the medical monitoring claim; (3) whether the trial court's re-charge to the jury on "substantial factor" caused prejudicial error; (4) whether the trial court erred in allowing defense counsel to discuss possible alternative sources of lead exposure during opening and closing arguments; and (5) whether the jury verdict was contrary to the weight of the evidence.

DISCUSSION:

Appellants' first argument is that the trial court erred in granting a directed verdict regarding their claim that the appellee's violations of the Philadelphia Air Management Code of 1969 constituted negligence *per se*.

A motion for directed verdict may be granted "if the plaintiff has failed to produce sufficient evidence to meet his or her burden of proof." *Montgomery v. So. Phila. Medical Group*, 441 Pa.Super. 146, 151, 656 A.2d 1385, 1388, *alloc. denied*, 542 Pa. 648, 666 A.2d 1057 (1995). On appeal, a reviewing court must view the evidence in the light most favorable to the party who suffered the directed verdict. *Id.*

Negligence *per se* has been defined as "[c]onduct, whether of action or omission, which may be declared and

3. The jury found Anzon liable for nuisance and cleanup damages in the case of two individual plaintiffs, and awarded $3,000 and $16,000. The jury also found Anzon liable for $2,000,000 for testing and surveying to determine cleanup needs for one of the three geographical zones involved in the case.

treated as negligence without any argument or proof as to the particular surrounding circumstances." *White by Stevens v. Southeastern PA. Transp.*, 359 Pa.Super. 123, 135, 518 A.2d 810, 815 (1986), *alloc. denied*, 515 Pa. 609, 529 A.2d 1083 (1987) (quoting Black's Law Dictionary, p. 933 (5th ed. 1979)). Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se.* *White, supra,* at 135, 518 A.2d at 816. However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to "secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public." *Centolanza v. Lehigh Valley Dairies,* 430 Pa.Super. 463, 478, 635 A.2d 143, 150 (1993), *aff'd,* 540 Pa. 398, 658 A.2d 336 (1995) (quoting Restatement (Second) of Torts, § 288(b) (1965)).

■ In order to prove a claim based on negligence *per se,* the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*See Kaplan v. Philadelphia Transp. Co.,* 404 Pa. 147, 171 A.2d 166 (1961); *Cecile Industries Inc. v. U.S.,* 793 F.2d 97 (3rd Cir.1986).

■ The trial court found that appellants had failed to satisfy the first requirement of negligence *per se:* i.e., that the purpose of the statute was to protect their interests as a particular group. Regarding the first requirement, the Pennsylvania Supreme Court has stated that the purpose of the asserted statute or regulation must be:

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 162, 470 A.2d 515, 517–18 (1983) (quoting Restatement (Second) of Torts, § 286 (1965)).

■ The legislative findings set out at the beginning of the Philadelphia Air Management Code state:

3–301(1) The City Council of the City of Philadelphia finds:

(a) that the atmosphere over the City is polluted to a degree which

(.1) is harmful and detrimental to the health, welfare and safety of the inhabitants,

(.3) interferes with the comfortable enjoyment of life, property and recreation, and with the comfort and operation of business and industry,

. . . .

(d) that effective control and elimination of air contaminants is essential to the furtherance of the health and welfare of the City's inhabitants, to the conduct of the normal pursuits of life, recreation, commerce and individual activity, and to sustaining life in an urban area;

(e) that the emission of toxic air contaminants into the community air increases the risks respecting acute and long-term health effects;

(f) that the presence of toxic substances in a workplace is a potential source of toxic emissions into the community air.

Philadelphia Air Management Code § 3–301(1)(a), (d)–(f).

It is clear from these findings that the purpose of the Code was to protect the "atmosphere over the City" of Philadelphia, with a concomitant benefits to its "inhabitants." There is no indication in these findings that the Code was meant to protect a particular class of individuals; rather it was enacted in "furtherance of the health and welfare of City's inhabitants, to the conduct of the normal pursuits of life, recreation,

commerce and individual activity, and to sustaining life in an urban area" Philadelphia Air Management Code 3–301(1)(d).

 Appellants' claim is analogous to those made in *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413 (M.D.Pa.1989) and *Fallowfield Development Corp. v. Strunk*, 1991 WL 17793, 1991 U.S.Dist.Lexis 1699 (E.D.Pa.1991), *remanded*, 22 F.3d 303 (3rd Cir.1994), where the courts denied negligence *per se* claims based on the Solid Waste Management Act, 35 P.S. 6018.101, and the Clean Streams Act, 35 P.S. 691.1. As one court remarked about the Solid Waste Management Act, it was

> intended to protect the health, safety and welfare of the community and not individuals seeking to recover pecuniary losses. The statute specifically permits the continued use of common law claims to further that interest.

*Fallowfield*, 1991 WL 17793, *10, 1991 U.S.Dist.Lexis 1699, 29. As with the statutes in those two cases, the Philadelphia Air Management Code can be seen as a general environmental protection statute that has the interests of the City community as a whole at the heart of its purpose.[4]

Additionally, it is significant that the Code does not provide a private cause of action to enforce compliance. Section 3–301(17) of the Code states: "Nothing in this Title shall be construed as limiting the rights of any person to redress in a court of law for any injury to persons or damage to property caused by air pollution." This section indicates that while no common law rights were abrogated, neither were any enhanced. Finally, we note that enforcement of the Code was vested in the Philadelphia Department of Public Health, and

---

4. Appellants' analogy to traffic regulations is misplaced. *See McEwan v. Yellow Cab Co.*, 182 Pa.Super. 219, 126 A.2d 816 (1956) (negligence *per se* applied to violation of Vehicle Code for following too closely and not maintaining an assured clear distance) and *Spearing v. Starcher*, 367 Pa.Super. 22, 532 A.2d 36 (1987) (negligence *per se* applied to violation of Vehicle Code for not maintaining an assured clear distance). A statute governing traffic has as its primary purpose the safety of those who use the roadways, while a statute governing air quality, by its nature, is directed to the population in general.

not to private individuals.[5] As a result, it is evident that the statute does not contemplate private causes of action.

■ There is a close relationship between whether a statute provides a private cause of action and whether it protects an individual harm that would support application of the negligence *per se* doctrine. *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 428 (M.D.Pa.1989). This is so because both private causes of action and negligence *per se* "address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damages liability." *Id.*, at 428. Therefore, the absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement for individual harms. *See Centolanza v. Lehigh Valley Dairies, supra*, at 478, 635 A.2d at 150 (evidence that private cause of action exists supports inference that statute is designed to protect the individual as well as the public, allowing application of negligence *per se* ).

■ The next issue raised by appellants is whether it was error for the trial court to grant a directed verdict as to plaintiffs' medical monitoring claim.[6] A recent holding of our Supreme Court, *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 239 (1996), stands as the first Pennsylvania appellate decision to recognize a claim for medical monitoring.[7]

5. Philadelphia Air Management Code § 3–103, 3–301 (1969).

6. Medical monitoring "seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm." *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 850 (3d Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991). In this case, plaintiffs sought $9,000,000 for medical monitoring.

7. *Simmons* recognized a claim for medical monitoring for plaintiffs diagnosed with asymptomatic pleural thickening caused by asbestos exposure. The *Simmons* Court relied on several federal cases applying Pennsylvania law that had recognized claims for medical monitoring. *Redland Soccer Club v. Dept. of Army of U.S.*, 55 F.3d 827 (3d Cir.1995); *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); *O'Neal v. Department of the Army*, 852 F.Supp. 327 (M.D.Pa.1994); *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829 (3d Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

 Though the *Simmons* Court did not address the factors to be used in evaluating a medical monitoring claim, the Third Circuit, which has recognized medical monitoring claims since 1990, has set forth the following four requirements:

1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant;

2. As a proximate cause of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.

4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 787 (3d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

 In this case the jury specifically found NL not negligent.[8] Therefore, the appellants cannot satisfy the first requirement for medical monitoring: i.e., negligent conduct by the defendant. As we do not disturb this jury finding, we need not address the question of whether the holding in *Simmons* would have required the jury to be instructed on medical monitoring in this case. Thus, even if *Simmons* was to apply to this case, the plaintiffs would not satisfy the applicable standards.

 Appellants' third allegation of error is that the trial court's instruction to the jury regarding "substantial factor"

8. The first question on the Verdict Sheet filled out by the jury was "Do you find that plaintiffs have proven that defendant NL Industries was negligent?" The jury answered "No."

632

misstated the law and confused the jury.[9]

This court has set forth the following standards to be used in reviewing the sufficiency of a jury charge:

When reviewing a claim that the trial court erred in instructing the jury, the scope of appellate review is whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Williams v. Philadelphia Transportation Company*, 415 Pa. 370, 203 A.2d 665 (1964). This court will look at the charge in its entirety against the background of evidence in the case to determine whether error was made and whether it was prejudicial. The court will not consider only portions taken out of context, *Reilly by Reilly v. Southeastern Pennsylvania Transportation Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984), nor will it reverse for isolated inaccuracies. *Noble C. Quandel Co. v. Slough Flooring Inc.*, 384 Pa.Super 236, 558 A.2d 99 (1989).

*Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 596, 604 A.2d 270, 272–73, *alloc. denied*, 531 Pa. 650, 613 A.2d 556 (1992).

9. Though phrased as part of the questions presented, appellants did not brief before this court their claim that the "burden of proof" instruction by the trial court was erroneous. Pennsylvania Rule of Appellate Procedure 2119 states "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part ... the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa. R.A.P. 2119(a) (emphasis added). This court has held that "[a]rguments that are not properly developed are waived." *Burrell Construction & Supply Co. v. Straub*, 440 Pa.Super. 596, 604, 656 A.2d 529, 533 (1995), *alloc. denied*, 542 Pa. 655, 668 A.2d 1120 (1995). As a result of their failure to develop this argument, appellants have waived their right to argue this claim before this court.

We also note that the appellee claims that the appellants waived any challenge on this point by failing to object or note exception. We disagree. After the court instructed the jury on substantial factor, the jury asked for a clarification. At this time, counsel for the plaintiff did request that a particular jury charge on substantial factor be given, which the court denied. N.T. November 21, 1994, 7169–70. Appellants also raised this same issue to the trial judge in their motion for post-trial relief. It is clear that appellants have not waived their right to challenge as error the instruction on substantial factor.

■ The trial court originally instructed the jury on the substantial factor requirement to the effect that the defendant could be found liable even if the defendant's conduct was not the sole cause of the plaintiffs' injuries. This was an accurate statement of the law. Upon request by the jury to clarify this issue, the judge gave a second instruction regarding substantial factor in which he repeated much of the first instruction and also added a hypothetical situation as an example. Appellants contend that the court misstated the law of substantial factor and confused the jury on the standards they needed to apply.[10]

10. The second instruction was as follows:

> And then finally, a word or two about the concept of substantial factor. You will recall that I suggested to you that the plaintiffs must prove that the defendants were negligent or careless and that negligence or carelessness was a substantial factor in causing the harm for which these plaintiffs complain.
> In order for the plaintiffs to recover in this case you need not find that the defendants' conduct is or was the sole cause of plaintiffs' harm. So long as defendants' conduct was a substantial factor in bringing about the harm for which the plaintiffs complain, this is what the law recognizes as legal cause.
> A substantial factor is an actual real factor although the result may be unusual or unexpected. But it is not an imaginary or fanciful factor or a factor having only an insignificant connection with the plaintiffs' damages.
> Now, members of the jury, let me give you an example involving a motor vehicle accident. Let's assume for a moment that I am driving south on Broad Street and I have a passenger in my car. And let's assume that we are talking and as I approach Broad and Walnut I look up and the light is red for me. However, I'm a little slow in applying my brakes and as a result when I get to the corner of Broad and Walnut I have to hit my brake a little harder than I should and as a result of this my passenger is jostled in her set [seat] a little bit. She kind of looks at me and I kind of say: "Sorry about that." And we wait for the light to change. Now, 20 seconds may not seem a long time but if you stare at a clock for 20 seconds it is a long time. So while we're sitting there talking, 20 seconds go by, the light turns green but before I'm ready to cross the intersection a car comes up from behind, hits us in the rear, strikes my car, pushes me across the street, I hit a pole and my passenger is injured.
> Now, is my negligence or was my negligence a substantial factor in causing the injuries when we hit that pole? You see, my negligence if I was careless, and you may agree that I was because I applied my brakes too hard, but my negligence is over. It's done with. Nothing has happened. My passenger has not been injured. My passenger is

▆▆▆▆▆▆▆ The fact that the judge used a hypothetical to illustrate the law is not error. This court has held that "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wilson v. Anderson,* 420 Pa.Super 169, 173, 616 A.2d 34, 36 (1992).

The effect of the hypothetical in this case was to convey to the jury the fact that a defendant could be found liable even though the defendant's action was not the sole cause of the plaintiffs' injuries (as would be the case with the second vehicle in the example), but that a defendant may not be found liable if its negligent act was an insignificant factor of the plaintiffs' injuries (as would be the case with the first vehicle in the example). We find that, taken as a whole, the trial court's instructions to the jury on the issue of substantial factor was not a misstatement of the law that was prejudicial to the outcome of the case.

The next contention of the appellant is that the trial court erred in allowing NL to state in its opening and closing arguments that there existed alternative sources that caused the lead exposure to plaintiff Anita Bryson. During its opening argument, counsel for the defense contended that the exposure of Anita Bryson was caused by debris in the backyard leftover from renovations to the home. N.T. September 22, 1994, 65, 68–69.[11] As stated by defense counsel "apparently the source of the Bryson problem is the backyard and all the lead that is sitting in their soil not having anything to do with the factory." N.T. September 22, 1994, 69. This idea was repeated by the defense in its closing argument.[12]

now injured because the second car plowed into the rear and caused her injuries.

So you see, it's the second car's negligence that was a substantial factor in causing her injuries and not my bringing the car to a halt a little too abruptly.

N.T. November 21, 1994, 7183–86.

11. Counsel for the appellants objected to this part of the argument but was overruled by the trial court. N.T. September 22, 1994, 65–67.

12. N.T: November 18, 1994, 6926–27.

 Regarding statements during opening and closing arguments, our Supreme Court has held that "[s]o long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box." *Contractors Lumber and Supply Company v. Quinette,* 386 Pa. 517, 522, 126 A.2d 442, 444 (1956). However, this latitude does not include discussion of facts not in evidence which are prejudicial to the opposing party. *Millen v. Miller,* 224 Pa.Super. 569, 572, 308 A.2d 115, 117 (1973). In general, any prejudicial remarks made by counsel during argument can be handled "within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion." *Wilf v. Philadelphia Modeling & Charm School, Inc.,* 205 Pa.Super. 196, 204, 208 A.2d 294, 298–99 (1965).

 The trial judge found that sufficient evidence was introduced at trial to support defense counsel's contentions during his arguments. We agree. There was testimony by Dr. Richard J. Lee that the lead inside the Bryson house tended to be found in the paint and plaster and that home remodeling could be a source of lead.[13] There was additional testimony from Dr. Joseph Rodricks that if lead paint was in the house at the time of renovation, then a contamination problem would exist after the renovation was completed,[14] and testimony from Ms. Bryson that the house had been completely renovated before she moved in.[15] Evidence was also introduced that the lead levels in the Bryson backyard was over twenty times higher than the levels in their neighbors' backyards, a fact which could not be explained by any emissions emanating from the appellee's plant.[16] This evidence supports the trial judge's ruling that the statements by defense counsel did not rely on facts not before the jury, and so we find no error by the trial court on this point.

13. N.T. November 7, 1994, 6413–15.

14. N.T. November 4, 1994, 6166.

15. N.T. October 5, 1994, 1920.

16. Plaintiffs' Exhibits 332A, 332B.

 The last issue raised by appellants is that the trial court erred in not granting a new trial on the grounds that the jury verdict as to NL was contrary to the weight of the evidence. It is the province of the jury to weigh the competing evidence produced at trial, and that function should not be disturbed by the trial court. We have held:

> A new trial will not be granted on the basis of a weight of the evidence claim unless evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice.

*Brindley v. Woodland Village Restaurant*, 438 Pa.Super. 385, 399, 652 A.2d 865, 872 (1995). In reviewing a trial court's decision on a weight of the evidence claim, this court will not reverse unless it is determined that the trial court acted capriciously or palpably abused its discretion. *Id.*

 At trial, appellants' primary expert testimony was based on "modeling exercises," from which appellants' expert would predict elevated lead levels in the air and dust based on levels derived from a few readings. Appellee, on the other hand, introduced testimony from individuals who had worked for the City of Philadelphia that NL's emission levels was within the required limits. As the trial court noted, "[i]t is obvious that the jury chose to accept determinations made by City officials and tests conducted by City departments which indicated that NL was not negligent." Slip Opinion, *Wagner v. NL Industries, Inc.*, Court of Common Pleas, Philadelphia, No 4420/1987 at 2–3. Given the competing evidence that was presented, it was for the jury to decide which expert to believe. The trial judge determined that this verdict for NL did not shock the court's conscience, and absent proof that this was an abuse of the trial court's discretion, we sustain that determination.

CONCLUSION:

We conclude that (1) the trial court did not err in granting a directed verdict on appellants' negligence *per se* claim because the ordinance at issue does not protect a particular class of

persons; (2) the trial court did not err in granting a directed verdict on appellants' medical monitoring claim because appellants did not satisfy one of the requirements for that claim, i.e., negligent conduct by the defendant; (3) the trial court's instructions to the jury on "substantial factor" did not misstate the law; (4) the statements by defense counsel during argument were supported by the evidence; and (5) the trial court did not err in failing to grant a new trial on the assertion that the jury verdict was contrary to the weight of the evidence.

Consequently, the order of the Court of Common Pleas of Philadelphia County is affirmed.