**Goda v. White Cliff Leasing Partnership**

478

C.P. of Mercer County, no. 2002-917.

*William G. McConnell* and *Richard W. Epstein,* for plaintiff.
*Thomas T. Frampton,* for defendants.

DOBSON, *J.,* May 21, 2003—The matters before this court for disposition are defendants White Cliff Leasing Partnership's, Lehigh Nursing Corporation's, PennMed Consultants Inc.'s, Francis A. Hayman Jr.'s and Lloyd Berkey's preliminary objections to plaintiff Michael Goda's amended complaint. For the reasons set forth below, defendants' preliminary objections are sustained in part and denied in part.

For purposes of reviewing preliminary objections based upon demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom"

are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000). When presented with preliminary objections whose end result would be the dismissal of a cause of action, a court should sustain the objections only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). (citations omitted) Furthermore, "[i]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

Goda filed a multi-count complaint against the defendants to which all of the defendants except Steven Ferguson M.D. filed preliminary objections. The court issued an opinion and order *(Goda I)* striking Counts VII (negligence per se), VIII (breach of contract), IX (breach of third party contract), and XII (Unfair Trade Practices and Consumer Protection Law). The court granted Goda leave to amend his complaint with respect to Counts VIII and XII, as well as leave to replead his negligence per se claim as part of his negligence claim. Goda then filed an amended complaint to which the defendants filed preliminary objections. These preliminary objections are now properly before the court.

In *Goda I*, the court set forth the salient facts, which are re-stated herein: White Cliff is a skilled care nursing

home facility licensed in Pennsylvania to provide services, to those unable to independently care for themselves. White Cliff also participates in the Medicare/Medicaid program. As such, it is subject to various statutes applicable to Medicare and Medicaid, as well as provider agreements between itself and Medicare and Medicaid.

Lehigh is a Pennsylvania corporation engaged in the business of operating skilled nursing facilities and is the general partner of White Cliff. White Cliff or its general partner, Lehigh, retained the services of PennMed to manage the day-to-day operations of White Cliff. Hayman is a limited partner of White Cliff; CEO, secretary, treasurer and owner of 100 percent of general partnership stock of Lehigh; and president of PennMed. Berkey is the nursing home administrator of White Cliff.

On February 25, 1997, Anne Goda (plaintiff decedent) was admitted as a resident of White Cliff. Plaintiff decedent remained a resident of White Cliff from the date of admission until her death on May 16, 2001. Goda maintains that the quality of care delivered to plaintiff decedent from White Cliff fell below an acceptable standard of care.

As a result of the inadequate care provided by White Cliff, plaintiff decedent suffered various conditions and injuries, including but not limited to recurrent urinary tract infections, stage IV pressure sores, osteomyelitis, sepsis, dehydration, internal bleeding and death. Consequently, Goda commenced the instant suit by filing a survival action and a wrongful death action against White Cliff, Lehigh, PennMed, Hayman and Berkey.

## I. NEGLIGENCE PER SE

White Cliff, Lehigh, PennMed, Hayman and Berkey filed preliminary objections in the nature of demurrer with respect to Goda's negligence claims, which are set forth in Counts I, II, III and VI. Defendants argue that the regulations set forth in the Omnibus Budget Reconciliation Act of 1987 (OBRA) and the Pennsylvania Health Care Facilities Act (PHCFA) cannot be used to establish a cause of action for negligence per se. The defendants' preliminary objections are sustained in part and overruled in part.

In *Goda I*, the court determined that a private cause of action did not exist under either OBRA or PHCFA. The absence of a private cause of action in a statutory scheme, however, does not necessarily preclude that statute's use as the basis for a claim of negligence per se. See *Wagner v. Anzon Inc.*, 453 Pa. Super. 619, 630, 684 A.2d 570, 574 (1996). Although, "[t]here is a close relationship between whether a statute provides a private cause of action and whether it protects an individual that would support application of the negligence per se doctrine. . . . This is so because both private causes of action and negligence per se 'address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damages liability.' . . . Therefore, the absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement for individual harms." *Id.* at 630, 684 A.2d at 575, quoting *Lutz v. Chromatex Inc.*, 718 F. Supp. 413, 428 (M.D. Pa. 1989).

To establish a claim for negligence per se, the plaintiff must establish: (1) that the purpose of the statute is "at

least in part, to protect the interest of a group of individuals, as opposed to the public generally;" (2) that the statute clearly applies to defendant's conduct; (3) that the defendant violated the statute; and (4) that the violation was the proximate cause of plaintiff's injuries. *Id.* Regarding the first requirement, Pennsylvania has adopted the Restatement (Second) of Torts §286 (1965), which provides that:

"the court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect the interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

With respect to the issue of whether Goda can base his negligence per se claim upon OBRA, defendants argue that the regulations set forth in OBRA were not enacted to protect the interests of the plaintiff decedent. Defendants maintain that the regulations are part of an administrative scheme that was created to ensure that the participating states and ultimately the certified facilities comply with the requirements set forth by the federal government to participate in the Medicare and Medicaid program. In fact, defendant argues OBRA was never intended to be the basis for civil liability. The court

rejects this argument and holds that Goda can base his negligence per se claim upon OBRA.[1]

The court must initially determine if the purpose of OBRA is, at least in part, to protect the interest of a group of individuals, as opposed to the public generally. To do so, the court will follow the guidelines of section 286 and first determine if plaintiff decedent was a member of the class the statute was intended to protect. The central purpose of OBRA is "to improve the quality of care for Medicaid-eligible nursing-home residents, and either to bring substandard facilities into compliance with Medicaid quality of care requirements or to exclude them from the program." *Beverly Health & Rehabilitation Serv. Inc. v. Thompson,* 2002 WL 31109618 (D.D.C. 2002), quoting H.R.Rep. no. 100-391(I) at 452, *reprinted in* 1987 U.S.C.C.A.N. at 2313-272. Plaintiff decedent, who was a Medicaid recipient and nursing home resident, falls within the class of individuals intended to be protected.

Since plaintiff decedent falls within this class, the court must determine if OBRA and its corresponding regulations were enacted to protect the interests of plaintiff decedent's health and welfare. The regulations of OBRA

---

1. This issue was considered in *McCain v. Beverly Health and Rehabilitation Serv. Inc.,* 2002 WL 1565526 (E.D. Pa. 2002) and in *Diggs v. Susquehanna Center for Nursing and Rehabilitation,* 35 D.&C.4th 373 (Dauphin Cty. 1996). Both courts concluded that despite the fact that the Medicare/Medicaid Acts do not provide for a private cause of action, a plaintiff could maintain a cause of action for negligence per se under the statute. The court in *McCain* specifically addressed the OBRA provisions of the Medicare/Medicaid Act. The defendants cite *Chalfin v. Beverly Enterprises,* 745 F. Supp. 1117 (E.D. Pa. 1990) in support of their position. In *Chalfin,* the court held that the regulations contained in OBRA could not be used as a basis for a negligence per se claim. This holding, however, was abrogated by *McCain.*

are designed to protect the interests of a Medicaid nursing home resident of a facility participating in the Medicaid program. Under 42 C.F.R. §483.25 "[e]ach resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being, in accordance with the comprehensive assessment and plan of care." Additionally, 42 C.F.R. §483.40 provides that "[e]ach resident must remain under the care of a physician." The court, therefore, believes that OBRA was enacted to protect the plaintiff decedent's health and welfare; thus the second element of section 286 is satisfied.

The final two elements of section 286 are also met with respect to certain provisions of OBRA. Goda alleges in his amended complaint that plaintiff decedent suffered a myriad of harms that OBRA was enacted to protect her from. However, the only regulation alleged in the amended complaint that satisfies the final two elements of section 286 is 42 C.F.R. §483.25(j), which provides "[t]he facility must provide each resident with sufficient fluid intake to maintain proper hydration and health."

The remainder of the OBRA provisions and regulations cited in the amended complaint may not be used to support a cause of action for negligence per se. These various provisions and regulations set forth goals for a nursing home to attain. For example, under 42 C.F.R. §483.25(c)(1) a facility must ensure that a resident who enters the facility without pressure sores does not develop pressure sores and under 42 C.F.R. §483.65 a facility must establish and maintain an infection control

program. The court believes that the defendants' failure to develop policies and procedures to attain the goals set forth in these provisions and regulations does not breach the requisite standard of care to establish a negligence claim, as a result Goda cannot use these provisions to maintain a cause of action for negligence per se.

With respect to the issue of whether Goda can base his negligence per se claim upon PHCFA, this court concludes that PHCFA was not intended to protect a particular class of individuals. Therefore, Goda cannot base his negligence per se claim on this statute.

In *Wagner v. Anzon Inc.,* a class of individuals, who resided within a half-mile radius of a lead processing facility, attempted to maintain a cause of action for negligence per se based upon the facility's violation of the Philadelphia Air Management Code of 1969.[2] See

2. The legislative findings of the code provides in part:

"Section 3-301(1)—The City Council of the City of Philadelphia finds:

"(a) that the atmosphere over the city is polluted to a degree which

"(.1) is harmful and detrimental to the health, welfare and safety of the inhabitants, . . .

"(.3) interferes with the comfortable enjoyment of life, property and recreation, and with the comfort and operation of business and industry, . . .

"(d) that effective control and elimination of air contaminants is essential to the furtherance of the health and welfare of the city's inhabitants, to the conduct of the normal pursuits of life, recreation, commerce and individual activity, and to sustaining life in an urban area;

"(e) that the emission of toxic air contaminants into the community air increases the risks respecting acute and long-term health effects;

"(f) that the presence of toxic substances in a workplace is a potential source of toxic emissions into the community air." *Wagner,* 453 Pa. Super. at 628, 684 A.2d at 574, quoting Philadelphia Air Management Code §3-301(1)(a), (d)-(f).

*Wagner,* 453 Pa. Super. 619, 625, 684 A.2d 570, 573 (1996). After reviewing the code, the court concluded that "the purpose of the code was to protect the 'atmosphere over the city' of Philadelphia, with a concommitant [sic] benefits to its 'inhabitants.' There is no indication . . . the code was meant to protect a particular class of individuals; rather it was enacted in 'furtherance of the health and welfare of [the] city's inhabitants . . . .'" *Id.* at 628, 684 A.2d at 574-75.

The case sub judice is similar to *Wagner.* Goda attempts to base his negligence per se claim upon PHCFA. The purposes of PHCFA are set forth in 35 P.S. §448.102:

"The General Assembly finds that the health and welfare of Pennsylvania citizens will be enhanced by the orderly and economical distribution of health care resources to prevent needless duplication of services. Such distribution of resources will be furthered by governmental involvement to coordinate the health care system. Such a system will enhance the public health and welfare by making the delivery system responsive and adequate to the needs of its citizens, and assuring that new health care services and facilities are efficiently and effectively used; that health care services and facilities continue to meet high quality standards; and, that all citizens receive humane, courteous, and dignified treatment. In developing such a coordinated health care system, it is the policy of the Commonwealth to foster responsible private operation and ownership of health care facilities, to encourage innovation and continuous development of improved methods of health care and to aid efficient and effective planning using local health systems agencies. It is the intent of the General Assembly that the Department of

Health foster a sound health care system which provides for quality care at appropriate health care facilities throughout the Commonwealth."

Thus, the intent of PHCFA was to have the Department of Health implement a system to enhance the delivery of health care services to promote public health. PHCFA does not apply to a particular class of individuals, but instead to the general public. It is concerned with improving the quality of care delivered by a health care facility to improve public health. The court does not believe that users of health care facilities constitute a particular class of individuals, since the vast majority of residents of the Commonwealth have utilized or will utilize the services of a health care facility. Nor does the court believe it is appropriate to create a sub-class of individuals inclusive only of nursing home residents given the broad definition of health care facilities under PHCFA.[3]

## II. UTPCPL

The defendants also filed preliminary objections in the nature of a demurrer to Count IX (UTPCPL) of Goda's amended complaint.[4] The defendants argue that the serv-

---

3. Section 448.103 defines health care facility as "any health care facility providing clinically related health services, including, but not limited to, a general or special hospital, including psychiatric hospitals, rehabilitation hospitals, ambulatory surgical facilities, long-term care nursing facilities, cancer treatment centers using radiation therapy on an ambulatory basis and inpatient drug and alcohol treatment facilities, both profit and nonprofit and including those operated by an agency or state or local government. The term shall also include a hospice." 35 P.S. §448.102.

4. In *Goda I*, this court required Goda to file an amended complaint specifically setting forth what unfair and deceptive practices defen-

ices outlined in paragraph 95 and the subsections of paragraph 27 referenced therein are medical services, as those services were provided by the defendants to provide medical care to plaintiff decedent. The defendants' preliminary objections are sustained with leave to amend only those allegations specifically enumerated in paragraph 95.

In *Goda I*, the court held that a nursing home could be held liable for unfair or deceptive acts prohibited by the UTPCPL that pertain to non-medical goods and services. This court then granted Goda leave to amend his complaint in order to conform to this holding. Goda, in his amended complaint, alleges:

"That many of the services provided by the defendants were non-medical services; said non-medical services being the providing for nutrition, proper hydration, proper staffing, proper development of written policies, proper cleanliness, observations of conditions, seeing that the staff is properly educated, provide adequate supervision and monitoring of the staff, and relevant to these non-medical services, the defendants were negligent in the providing of the same as set forth in paragraph 27(c)-(d), (g)-(h), (m), (o), (q)-(s), (v)-(w), (y)-(z), (dd), (ff), (hh)-(ii), (kk)-(nn), (pp), (rr)-(tt), (vv)-(ww) and (xx)." Goda's amended compl., ¶95.

The court, in order to determine if Goda's allegations pertain to medical or non-medical services, must define each term. To do so, the court believes it is necessary to review the decisions of *Foflygen v. Zemel,* 420 Pa. Su-

---

dant Hayman engaged in as an individual. Goda, however, fails to do so in his amended complaint, therefore, Count IX of the amended complaint is stricken with respect to Hayman.

per. 18, 615 A.2d 1345 (1992), and *Gatten v. Merzi*, 397 Pa. Super. 148, 579 A.2d 974 (1990). The underlying rationale for the *Foflygen* and *Gatten* decisions is that the General Assembly did not intend for the UTPCPL to apply to claims against physicians in connection with the treatment of a patient because the term "trade and commerce," as used in the statute, was not intended to encompass medical services. In *Gatten,* the court reasoned:

"Under our law, the liability of a physician is premised upon either fault, lack of informed consent, or a specific contract warranting certain results. . . . It is clear that the legislature, in passing the Act, did not intend to disturb existing common and statutory law regarding when liability for the rendition of medical services attaches to a physician." 397 Pa. Super. at 152, 579 A.2d at 976.

With this in mind, the court believes that for purposes of determining the applicability of the UTPCPL *medical services* are those evaluative, diagnostic, preventative, therapeutic and supervisory services that are customarily provided by or at the direction of a physician or health care worker in order to treat a patient.[5] Medical services, as defined above, do not fall within the ambit of the UTPCPL, as liability for rendering such services must be premised upon either fault, lack of informed consent, or a specific contract warranting certain results.

---

5. A physician is "[a] practitioner of medicine; a person duly authorized or licensed to treat diseases; one lawfully engaged in the practice of medicine." Black's Law Dictionary 1147 (6th Ed. 1990). A health care worker would include nurses, EMTs, dietitians and the like.

The court believes that the following allegations pertain to medical services and therefore are stricken from the Count IX:

(1) Allegations regarding plaintiff decedent's pressure sores, specifically paragraph 27(c)-(d), (g), (o), (q), (s) and (y)-(z);

(2) Allegations regarding plaintiff decedent's pain assessment, specifically paragraph 27(m) and (y);

(3) Allegations regarding plaintiff decedent's decubitus ulcers, specifically paragraph 27(h);

(4) Allegations regarding plaintiff decedent's sepsis, specifically paragraph 27(r);

(5) Allegations regarding plaintiff decedent's pneumonia, specifically paragraph 27(vv);

(6) Allegations regarding plaintiff decedent's incontinence, specifically paragraph 27(dd);

(7) Allegations regarding defendants' failure to properly assess plaintiff decedent's history and physical, identify any complications and co-morbidities, and perform a proper psycho-social assessment, specifically paragraph 27(y); and

(8) Allegations regarding defendants failing to ensure plaintiff decedent's care plan was properly implemented, failing to oversee nursing staff, failing to provide professional services that meet a professional standard of quality, failing to have an attending physician properly oversee care, specifically paragraph 27(w), (hh), (mm)-(nn) and (xx).

Additionally, Goda's remaining allegations in paragraph 95 of the amended complaint are not sufficiently pled. For instance, Goda alleges that non-medical services include nutrition, hydration, proper staffing, proper

development of written policies, observations of condition, seeing that the staff is properly educated, providing adequate supervision and monitoring of the staff. The court does not know what Goda means by nutrition, hydration or proper staffing;[6] what Goda means by proper staffing; what is the subject matter of the written policies; what are the types of conditions Goda refers to; and what tasks carried out by the staff did the defendants fail to monitor. These allegations could involve either medical or non-medical services.

Goda, therefore, must file a second amended complaint amending paragraph 95 of his amended complaint. Goda must specifically allege (1) that a particular service was non-medical, meaning that the service does not fall within the aforementioned definition of medical services, and (2) that the particular service was provided in a manner that violated the provisions of the UTPCPL.

Hence this order:

## ORDER

And now, May 21, 2003, it is hereby ordered that the defendants' preliminary objections in the nature of demurrer as to paragraphs 29, 38, 44, 52 and 80 of Goda's amended complaint are sustained in part with respect to those portions of the above referenced paragraphs that attempt to set forth a cause of action for negligence per se based upon PHCFA and with respect to those portions of OBRA that do not involve 42 C.F.R. §483.25(j).

---

6. For example, nutrition could refer to the development of a proper dietary plan, which would be a medical service, or it could refer to physically delivering plaintiff decedent meals on a timely basis, which would be a non-medical service.

It is further ordered that the defendants' preliminary objection in the nature of demurrer as to Count IX of Goda's amended complaint is sustained in part with leave to amend paragraph 95.

It is further ordered that Count IX of Goda's amended complaint is stricken without leave to amend with respect to Francis A. Hayman Jr.